## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| In re: | Case No. 8:24-bk-00676-RCT |
| THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., | Chapter 11 |
| Debtor. | |
| MICHAEL GOLDBERG, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration, Inc. | Adversary No. 8:24-ap-343-RCT |
| Plaintiff, | |
| v. | |
| FIDUCIARY TAX & ACCOUNTING SERVICES, LLC, a Florida limited liability company, | |
| Defendant. | |

### PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff, Michael Goldberg, as Chapter 11 Trustee ("Chapter 11 Trustee") of the estate of The Center for Special Needs Trust Administration, Inc. (the "Debtor"), by and through undersigned counsel, hereby submits this reply to the Defendant's Response to Plaintiff's Motion for Summary Judgment [Adv. No. 20] (the "Response") and in support of its Motion for summary Judgment [Adv. No. 12]. In support the Plaintiff states as follows:

1. In its Motion for Summary Judgment, the Plaintiff indisputably established all elements of its action to recover funds paid post-petition without Court approval pursuant to Section 549 of the Bankruptcy Code: 1) the Transfers all come from a Debtor bank account pos-

petition, and 2) the Debtor never sought Court permission to make this post-petition payment from its bank account.

2. Defendant FTA is an insider of the Debtor, run by the same people that syphoned over $100 million dollars from the Debtor for no reasonably equivalent value.

**I. Declaration Reliant on Hearsay Does Not Create Issue of Fact.**

3. FTA, in the Response, seeks to create an issue of fact through the self-serving declaration of John Witeck (attached as Exhibit A to the Response), which states, that based on his secondhand knowledge from "conversations with the Debtor's representatives and my general understanding of the Debtor's business practices" that the Debtor was supposed to pay for the alleged services provided by the Defendant indirectly from beneficiary accounts. *See Martin v. John W. Stone Oil Distributor, Inc.,* 819 F.2d 547, 549 (5th Cir.1987) (courts cannot properly consider hearsay evidence in ruling on motion for summary judgment).

4. Defendant relies solely on hearsay evidence contained in Witeck's self-serving declaration that, even if true, still fails to establish an issue of fact. Other than Witeck's conclusory and general hearsay allegations of his understanding of the Debtor's operations, the Defendant has failed to put forth "specific facts showing that there is a genuine issue for trial" on this issue. *See* Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

5. If Mr. Witeck had actual firsthand knowledge of the Debtor's operations and Leo Govoni's syphon of estate assets and commingling of beneficiary funds, that would make the Defendant not only an insider of the Debtor, but would transform Mr. Witeck and the Defendant into active participants in the underlying fraud.

**II. Even if Not Hearsay, the Witeck Declaration Fails to Create an Issue of Fact**

6. Based on Mr. Witeck's hearsay understanding of how the Debtor was supposed to work, Defendant claims no property of the estate was paid to FTA and therefore the Debtor was not required to seek Court approval before paying Defendant through the Debtor's general bank account post-petition.

7. Neither the Response nor the Witeck affidavit, even when ignoring the hearsay issues, create any genuine issues of fact. The Transfers to the Defendant indisputably came from a Debtor account post-petition, not beneficiary accounts, and the Defendant provides no evidence to refute that or that individual beneficiary bank accounts were debited.

8. Further, even if true that beneficiary accounts were debited, regardless of whether it happened before or after the Transfers to the Defendant, does not change the result. The money in the Debtor's bank accounts is property of the bankruptcy estate. The Debtor was also the one that retained the Defendant to allegedly perform services, likely because the Defendant also happens to be an insider and ultimately under the same control of Leo Govoni as the Debtor was before the Trustee's appointment.

9. Money in a general bank account of the Debtor, solely under the Debtor's control, belongs to the Debtor. The Eleventh Circuit has said as much in its seminal conduit defense case: "Thus, where a debtor has paid existing debts, the funds used as payment are presumed to be the debtor's property absent some proof to the contrary offered by those defending the transfer. *In re Chase & Sanborn Corp.*, 813 F.2d 1177, 1181 (11th Cir. 1987). Just because payment by the Debtor for services purportedly provided to a beneficiary might create an obligation on the beneficiary to reimburse the Debtor does not change the Debtor's unfettered control over its bank

accounts, as the Debtor, through Govoni, transferred over $100+ million in funds to affiliates without any issues or difficulty for over 15 years.

10. Mr. Witeck's self-serving understanding of the Debtor's operations is not evidence of anything since the Debtor was operating *ultra vires* until the Chapter 11 Trustee's appointment in this case. The Debtor did not function like a bank taking instruction from beneficiaries and moving money upon their request. The conduit defense is simply not applicable to the Debtor because the Debtor initiated the Transfers. It does not matter that a beneficiary account was debited as a result. The conduit test focuses on control, and here the only control exercised over the Debtor's bank accounts was by the Debtor.

11. How the conduit defense works in the context of an unauthorized post-petition transfer is best illustrated in the *In re Cypress Restaurants of Georgia, Inc.,* 332 B.R. 60 (Bankr. M.D. Fla. 2005) case. In *Cypress*, a staffing agency which supplied employees to a Chapter 7 debtor restaurant, and to which debtor made unauthorized postpetition wire transfers in order to reimburse staffing agency for wage payments that it had earlier made to these same employees, was not "mere conduit," but an "initial transferee," whom the trustee could hold liable for the amount of the unauthorized postpetition transfers. As clarified by Judge Jennenam, unlike a mere conduit whose obligation to a transferee will not arise until the conduit first receives payment from a debtor-transferor, the staffing agency in *Cypress*, much like the Debtor did here, paid restaurant employees in satisfaction of its own independent obligation thereto. The wire transfers were not redirected to any third party, but retained by the staffing agency in reimbursement of the payments it made. *Cypress*, 332 B.R. at 65 ("In this case, the conduit is the institution through which the debtor made the wire transfers to TMG and TMG is the initial transferee… A party's duty to pay its own debts out of revenue does not make the party a mere conduit.).

4

12. Here the Defendant could have but did not produce (because they do not exist) an agreement between itself and each of the beneficiaries it supposedly serviced to rebut the fact that the Debtor made the transfer in order to satisfy its own obligation. The Defendant could have also produced its agreements with the Debtor where Mr. Witeck's understanding is supported by more than mere conversation with unidentified third parties. Absent anything that could rebut the bank statements showing funds leaving the Debtor's account and going to the Defendant postpetition, the Court only has before it unauthorized post-petition transfers of estate funds as evidenced by the bank account statements attached to its Summary Judgment Motion as Exhibit A.

13. Defendant's understanding of how things were supposed to work, even if true, fails to establish a conduit defense because even if individual beneficiary accounts were debited, either before or after the Transfers, the money that originally went to pay the Defendant originated from the Debtor's bank accounts were commingled funds were utilized by the Debtor for all purposes without any restrictions, which is why Govoni was able to create and fund insider entities using beneficiary funds, which insider entities include the Defendant.

14. There is no evidence before the Court that there was a transfer of beneficiary money to the Defendant pursuant to the instructions, knowledge, or agreements directly with the beneficiaries.

15. Because the Transfers indisputably constitute property of the Debtor's estate and took place post-petition without Court authority, even after the Trustee's appointment, and nothing in the Response nor the Witeck Declaration contest these facts, summary judgment must be entered in favor of the Chapter 11 Trustee and against the Defendant for the requested amount of for $117,200, plus costs and pre-judgment interest to be calculated in accordance with 28 U.S.C. § 1961.

Dated: April 25, 2025

AKERMAN LLP

By: */s/ Steven R. Wirth*
    Steven R. Wirth
    Florida Bar No.: 170380
    Email: steven.wirth@akerman.com
    Raye C. Elliott
    Florida Bar No.: 18732
    Email: raye.elliott@akerman.com
    401 East Jackson Street, Suite 1700
    Tampa, Florida 33602
    Telephone: (813) 223-7333
    Facsimile: (813) 223-2837

*Counsel for Chapter 11 Trustee, Michael Goldberg*

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on April 25, 2025, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record.

    */s/ Steven R. Wirth*
    Attorney

81091625;2