ORDERED.

Dated: May 12, 2025

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br>The Center for Special Needs Trust Administration,<br>    Debtor.<br>_____ | Case No. 8:24-bk-00676-RCT<br><br>Chapter 11 |
| Michael Goldberg, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration,<br>    Plaintiff,<br>v.<br><br>Fiduciary Tax & Accounting Services, LLC,<br>    Defendant.<br>_____/ | Adv. Pro. 8:24-ap-00343-RCT |

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter came before the Court, without a hearing, on Plaintiff's Motion for Summary Judgment. (Doc. 12). Defendant has filed a response (Doc. 20), and Plaintiff has filed a reply (Doc. 26). As explained below, the Court grants Plaintiff's motion.

**I. Standard of Review**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[1] The Court must

---

[1] Fed. R. Civ. P. 56(a), made applicable here by Fed. R. Bankr. P. 7056.

draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.[2] The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.[3] When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.[4] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[5]

## II.  Background

Debtor The Center for Special Needs Trust Administration, Inc. served as the trustee or co-trustee of numerous special needs trusts ("SNTs") for over 2,000 beneficiaries who suffer from various levels of disability. Debtor's primary duties as trustee of the SNTs included managing the SNTs, responding to requests for distributions from the beneficiaries, and making distributions.

Before filing the Chapter 11 bankruptcy petition on February 9, 2024, Debtor's leadership discovered that Debtor had "loaned" approximately $100 million over a fifteen-year period to a third-party, Boston Finance Group, LLC, and that the loan was in default.

On March 21, 2024, Plaintiff Michael Goldberg was appointed as the Chapter 11 Trustee of Debtor's estate.  Thereafter, the Trustee filed this adversary proceeding against Defendant Fiduciary Tax & Accounting Services, LLC ("FTAS") seeking avoidance and recovery of Debtor's post-petition transfers to FTAS.

---

[2] *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).
[3] *See id.* (citation omitted).
[4] *See id.* (citation omitted).
[5] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

In the adversary complaint, the Trustee alleges the following, which FTAS does not dispute: FTAS provided accounting services for Debtor.[6] After filing for bankruptcy, Debtor made three payments to FTAS totaling $117,200: (1) a March 7, 2024, payment of $71,350; (2) a March 22, 2024, payment of $43,500; and (3) an April 9, 2024, payment of $2,350.[7] Debtor did not file an application to employ FTAS as a professional in the main bankruptcy case, nor did this Court approve such employment.[8] Additionally, these three post-petition payments were not authorized by this Court.[9]

Based on the above, the Trustee asserts two claims against FTAS. In Count I, the Trustee asserts a claim for avoidance of the three post-petition transfers, pursuant to 11 U.S.C. § 549(a). In Count II, the Trustee asserts a claim for recovery of the avoided transfers, pursuant to 11 U.S.C. § 550(a)(1).

## III. Motion for Summary Judgment

The Trustee moves for summary judgment on both counts. Accordingly, the Court will analyze each count.

### A. Count I: Avoidance under § 549(a)

In Count I, the Trustee asserts a claim for avoidance of the three post-petition transfers, pursuant to § 549(a). That section provides, in relevant part, that "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case . . . [and] that is not authorized under this title or by the court."[10]

FTAS argues that this claim fails, because the money Debtor transferred to FTAS was not property of the estate. Instead, FTAS argues, the money came from the SNTs, and Debtor was a

---

[6] Doc. 1, ¶ 15; Doc. 4, ¶ 15.
[7] Doc. 1, ¶ 16; Doc. 4, ¶ 16.
[8] Doc. 1, ¶ 18; Doc. 4, ¶ 18.
[9] Doc. 1, ¶ 24; Doc. 4, ¶ 24.
[10] 11 U.S.C. § 549(a).

3

mere conduit that transferred those funds to FTAS. The conduit theory is an affirmative defense, and as a result, FTAS would have the burden of proving that defense at trial.[11]

The Eleventh Circuit addressed the conduit theory in the case of *In re Chase & Sanborn Corp.*, in which the creditor trustee sought to avoid an allegedly fraudulent transfer of $350,000 from the corporate debtor's bank account.[12] The appellate court ultimately concluded that the $350,000 was not property of the debtor (and thus not subject to avoidance).[13] Instead, the appellate court found that the debtor was a mere conduit for the payment that was channeled into the debtor by its sole owner and then was transferred out to a third-party (Sanchez) to eventually satisfy the personal debt of the owner.[14] In analyzing the transfers, the appellate court stated:

> Although the debtor corporation had possession of the funds in controversy by virtue of the transfer to the account, the record demonstrates that the debtor corporation did not have sufficient control over the funds to warrant a finding that the funds were the debtor corporation's property.
> \* \* \*
> In support of the contention that the payment to Sanchez is avoidable as a fraudulent transfer of the debtor's property, the creditor trustee here relies exclusively on cases involving preferential transfers to creditors, *see* 11 U.S.C. § 547, where the source of the payment was a party other than the debtor. The germinal case on this issue established the rule that a payment to a creditor generally is avoidable as a preference unless the defendants demonstrate that the other party [*i.e.,* the source of the funds] "controlled the application of the funds" by providing the monies [to the debtor] "only on condition that a particular creditor receive the proceeds." Thus, where a debtor has paid existing debts, the funds used as payment are presumed to be the debtor's property absent some proof to the contrary offered by those defending the transfer.
>
> The rules established in the avoidable preference cases are applicable to a certain extent in the context of fraudulent transfers. The purpose of avoidance of both types of transfers is to prevent a debtor from diminishing, to the detriment of some or all creditors, funds that are generally available for distribution to creditors.

---

[11] *See Perlman v. Bank of America, N.A.,* 561 Fed. Appx. 810, 812–13 (11th Cir. 2014).
[12] 813 F.2d 1177, 1178 (11th Cir. 1987).
[13] *See id.* at 1178-79.
[14] *See id.*

>Consequently, any funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property, and any transfers that diminish that property are subject to avoidance.[15]

Thus, "[i]n order to incur liability as a transferee, a party must have exercised a degree of dominion and control over the property transferred, or held some sort of beneficial right in it."[16] Further, "[i]n determining whether the debtor had control of funds transferred to a noncreditor, the court must look beyond the particular transfers in question to the entire circumstance of the transactions."[17] Here, after considering the entire circumstance of the transactions, it is clear that FTAS has not produced any evidence to support its contention that Debtor did not control the funds it transferred to FTAS.

FTAS' argument is based on the following underlying assertions: (1) the money held in the SNTs belongs to the beneficiaries and is not property of the bankruptcy estate; (2) FTAS performed work for the SNTs, and Debtor deducted money from the SNTs to pay FTAS for that work; and (3) Debtor was a conduit, merely taking the money from the SNTs and paying it to FTAS, with Debtor having no control over the money other than to pay it over to FTAS. While this argument has some initial appeal, FTAS' underlying assertions are not supported by the evidence.

FTAS does not dispute that Debtor made the second and third payments directly to FTAS. Instead, FTAS argues that the funds for those payments came from the beneficiaries' SNTs, and the funds in the SNTs are not property of the bankruptcy estate.[18] However, FTAS fails to produce any evidence to support its contention that the funds for those payments by Debtor to FTAS came from the beneficiaries' SNTs.

---

[15] *Id.* at 1180-81 (internal citations omitted).
[16] *In re International Administrative Services, Inc.*, 408 F.3d 689, 707 (11th Cir. 2005) (citation omitted).
[17] *Chase & Sanborn*, 813 F.2d at 1181–82.
[18] Section 541(b)(1) provides that "[p]roperty of the estate does not include . . . any power that the debtor may exercise solely for the benefit of an entity other than the debtor." Therefore, if a debtor holds property in trust for someone else, that property does not become property of the debtor's bankruptcy estate. *See Peachtree Special Risk Brokers, LLC v. Kartzman (In re Rocco Co., Inc.)*, No. 10-18799 (DHS), Adv. No. 12-1269 (DHS), 2014 WL 7404566, at *4 (D.N.J. Dec. 29, 2014).

FTAS also argues that the second and third payments to FTAS were for work directly performed by FTAS for the SNTs, as opposed to work for Debtor by FTAS. It appears that FTAS is arguing that the payments were for debts owed by the SNTs to FTAS. Again, however, FTAS fails to produce any evidence of an agreement between itself and the SNTs. The only evidence before the Court is a declaration of John Witeck, a member of FTAS, who states the following:

> 4.     FTAS provided accounting services to the Debtor . . . in its capacity as trustee of the [SNTs] . . ..
>
> 5.     As compensation for certain accounting services rendered, the Debtor paid FTAS $71,350.00 on March 7, 2024 (the "3/7 Payment"); $43,500.00 on March 22, 2024 (the "3/22 Payment"), and $2,350.00 on April 9, 2024 (the "4/9 Payment").
>
> 6.     The 3/22 Payment was compensation for FTAS's preparation of certain Form 1099s for third party vendors and contractors who performed services for the [SNTs].
>
> 7.     The 4/9 Payment was compensation for FTAS's preparation of certain tax returns (Form 1041s) for the [SNTs] administered by the Debtor.[19]

In the declaration, Witeck states that he provided accounting services to Debtor, which implies it was Debtor that owed FTAS payment for the work at issue (making FTAS Debtor's creditor). The declaration does not support the contention that the payments were for debts owed directly by the SNTs to FTAS.

Next, FTAS' argument is based on the contention that Debtor deducted money from the SNTs to pay FTAS for its work. Again, there is no evidence before the Court to support that contention. Instead, Witeck states in his declaration:

> 8.     Based on my conversations with the Debtor's representatives and my general understanding of the Debtor's business practices, I understand that the Debtor allocated FTAS's services to the individual [SNTs] for whose benefit FTAS performed the referenced services, debited each applicable [SNT] for its proportionate share of such services, and then aggregated and paid those funds to FTAS. I specifically understand that the 3/22 Payment and 4/9 Payment were drawn from individual [SNTs], aggregated by the Debtor, and then paid to FTAS as compensation for its

---

[19] Doc. 20-1.

services.

> 9. I do not presently have access to documentation that would confirm the 3/22 Payment and 4/9 Payment were drawn from the individual [SNTs] and then aggregated and paid to FTAS as stated above. However, I understand that records reflecting the foregoing are in the possession of the Trustee. Consequently, pursuant to Federal Rule of Civil Procedure 56(d), additional discovery is needed for FTAS to justify its opposition to the Motion.[20]

Thus, Witeck's declaration is based on his "understanding" of Debtor's alleged business practices from unidentified sources. Such hearsay cannot be used to defeat summary judgment. Furthermore, FTAS' "need" for additional discovery to prove its "understanding" should have been addressed earlier. This Court issued its Trial Order on January 9, 2025, in which is set the discovery deadline as April 11, 2025.[21] FTAS asserted the conduit affirmative defense on November 18, 2024, and the Trustee filed his motion for summary judgment on February 6, 2025. As such, FTAS' need for this discovery should have been satisfied long before now.

All these contentions are proffered in support of FTAS' main argument—that Debtor was a conduit, merely taking the money from the SNTs and paying it to FTAS, with Debtor having no control over the money other than to pay it over to FTAS. Again, FTAS provides no evidence of an agreement between Debtor and the SNTs regarding the alleged use of their funds.[22]

Accordingly, the record could not lead a rational trier of fact to find for FTAS on its conduit affirmative defense. Instead, it is clear that, based on the evidence before the Court, there is no genuine issue of material fact that the conduit affirmative defense does not apply to the second and third payments to FTAS. Those payments can only be characterized as post-petition transfers of property of the estate that were not authorized under the Bankruptcy Code or by this Court.

---

[20] Doc. 20-1.
[21] Doc. 9.
[22] *See In re Cypress Restaurants of Georgia, Inc.*, 332 B.R. 60, 64 (Bankr. M.D. Fla. 2005) (noting that an entity may be a conduit when it "receives transferred funds subject to precise disbursement instructions from the transferor").

FTAS, however, does not assert the conduit affirmative defense with respect to the first payment to FTAS on March 7, 2024, of $71,350. Instead, for that payment, FTAS argues that it was implicitly approved by this Court because the Trustee had listed that payment to FTAS as an approved payment to a professional on its May 2024 monthly operating report filed in the main bankruptcy case.[23] However, FTAS admits that the main bankruptcy "docket does not reflect the filing of any application by the Debtor or Trustee to employ FTAS or to approve its compensation as reflected in the monthly operating reports."[24]

To avoid the fact that there is no Court approval of FTAS' employment or of any post-petition compensation paid to it by Debtor, FTAS argues that such applications could be filed retroactively or that FTAS could obtain approval for those fees pursuant to a substantial contribution theory under 11 U.S.C. § 503(b)(3)(D). However, no such motions for relief have been filed or granted, and as such, the money Debtor paid to FTAS remains unapproved by the Court at the time that the post-petition transfers were made, in violation of § 549(a).

Based on the above, the Trustee has shown that there is no genuine issue of material fact as to Count I—Debtor made three post-petition transfers of property of the estate to FTAS that were not authorized under the Bankruptcy Code or by this Court. As such, the Court grants the Trustee's motion for summary judgment as to Count I of the adversary complaint and avoids Debtor's three post-petition transfers to FTAS.

**B. Count II: Recovery under § 550(a)(1)**

In Count II, the Trustee asserts a claim for recovery of the avoided transfers, pursuant to § 550(a)(1). That section provides, in relevant part, that if a transfer is avoided under § 549, "the

---

[23] BK Doc. 279, p. 3; BK Doc. 279-1, p. 9. FTAS also makes this argument with respect to the second and third payments. However, the Court rejects this argument with respect to all three payments.
[24] Doc. 20, p. 7.

trustee may recover, for the benefit of the estate, the property transferred . . . [from] the initial transferee of such transfer."[25]

FTAS has not addressed this count, hanging its hat solely on its arguments that the Trustee's claim to avoid the three post-petition transfers in Count I fails.  However, the Court has granted summary judgment on Count I and avoided Debtor's three post-petition transfers to FTAS.  As such, the Court grants the Trustee summary judgment on Count II and finds that the Trustee may recover those funds, totaling $117,200, from FTAS, pursuant to § 550(a)(1).[26]

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)　　The Trustee's Motion for Summary Judgment (Doc. 12) is **GRANTED**.

(2)　　The Court will enter judgment in favor of the Trustee consistent with this order.

(3)　　Thereafter, the Clerk may proceed to close this case.

Service of this Order other than by CM/ECF is not required.  Local Rule 9013-3(b).

---

[25] 11 U.S.C. § 550(a)(1).
[26] *See In re Delco Oil, Inc.,* 599 F.3d 1255, 1259 (11th Cir. 2010).